der these circumstances. The appellant had purchased land on which he intended to build an apartment house. In order to pay for the land and the building, he secured a loan of $400,000 on condition that the person advancing the money should be given a bond in the sum of $300,000 guaranteeing the completion of the building. The City Trust, Safe Deposit & Surety Company agreed to give its bond, but required a deposit of $200,000 to be paid out by it to the builders on the certificate of the architect as the work progressed.

In carrying out his purpose the appellant had the land conveyed to a straw man, who entered into a contract for the erection of the building. This contract was guaranteed by the trust company on the deposit with it of $200,000 by the appellant. The deposit was under the management of the surety department of the trust company, which was distinct from its banking and trust business, and it was governed entirely by the terms of the agreement between the parties, under which it was made.

The learned auditors found that there was no agreement to pay interest, and that there was no evidence of a custom to pay interest on deposits of the kind. These findings were sustained by the testimony and have been approved by the court. We find nothing in any of the assignments of error that calls for a reversal. They are all dismissed and the order of the court is affirmed at the cost of the appellant.

---

# Pottstown Iron Company v. Glasgow Iron Company, Appellant.

*Contract—Lease of iron works—Rental—Minimum rental.*

A lessee of an iron works agreed to pay to the lessor an amount "equivalent to fifty per cent of the total amount of the net profits accruing from the operation of the said works. . . . And it is also understood and agreed that the minimum rental to be paid by the party of the second part shall be at the rate of one thousand dollars per month during the time of possession or occupation, whether the

one-half of the profits above recited shall equal that sum or not. . . . Settlements of the rentals due hereunder and payment of the same shall be made in the months of January and July of each year." It was also provided that in case of a partial destruction of the works, such part should be rebuilt, "and during the time of such repairing or rebuilding, the minimum rent payable by the said party of the second part shall be reduced," to an amount to be ascertained by referees. *Held*, that the lease should be construed so as to mean that the lessee was to pay $6,000 rental every half year, except when the net profits exceeded $12,000, and that in such an event the rental was to be fifty per cent of the profits.

Argued Jan. 12, 1910. Appeal, No. 167, Jan. T., 1909, by defendant, from order of C. P. No. 4, Phila. Co., June T., 1908, No. 1,986, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Pottstown Iron Company v. Glasgow Iron Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCH-ZISKER, JJ. Affirmed.

Assumpsit for rentals.

Rule for judgment for want of a sufficient affidavit of defense.

AUDENRIED, J., filed the following opinion:

The plaintiff leased its iron works to the defendant for the term of twenty years from December 31, 1900. As rental for the property demised, the defendant agreed to pay the plaintiff a sum equivalent to fifty per cent of the total amount of the net profits accruing from its operation, but it was stipulated that "the minimum rental to be paid shall be at the rate of one thousand dollars per month during the time of possession or occupation whether the one half of the profits above recited shall equal that sum or not;" and it was provided that "settlements of the rentals" and "payments of the same shall be made in the months of January and July of each year."

At the end of each period of six months up to June 30, 1907, the defendant accounted to the plaintiff for its profits and paid half of what its statements showed had been earned.

These payments aggregated $422,229.40. At the minimum monthly rate fixed by the lease the total rental to the date named would have amounted to but $78,000.

In January, 1908, the defendant asserted that in the last preceding half year it had made no profits whatever, and refused to make any payment to the plaintiff. The sums already paid by the defendant up to that time slightly exceeded an average of $5,000 per month.

The plaintiff has brought this action to recover the sum of $6,000 as rental for the second half of the year 1907, upon the basis of the minimum rate fixed by the lease.

The defendant argues that it is not bound to pay the minimum rental at the monthly rate provided for by the lease so long as the aggregate of its payments of rent since the beginning of its term amounts to the sum of $1,000 for each of the several months that have elapsed since that date. That conclusion is based upon the proposition that the only requirement of the lease on this point is "that the rental shall average at least $1,000 per month during the whole term, not that it shall average at least $1,000 per month for every semiannual period."

The plaintiff contends that the lease must be interpreted as meaning that the tenant is to pay $6,000 rental every half year except when its net profits from the operation of the iron works exceed $12,000, and that in such an event the rental paid is to be fifty per cent of the profits.

The question of construction thus presented is not without difficulty. After considerable thought, however, we have determined that the interpretation put upon the lease by the defendant cannot be sustained, and that judgment must be entered for the plaintiff for want of a sufficient affidavit of defense.

According to the fourteenth paragraph of the lease, the minimum sum of $1,000 per month is to be paid as "rental." It is provided by the seventeenth paragraph of the lease that settlements of the rentals thereunder and payments of the same shall be made in the months of January and July of each year. There is no indication in the latter clause that

at the settlement of the rent payable at the end of each half year the payments made in previous half years shall be brought into the account. On the contrary, the use of the words "settlements" and "payments" in this connection implies, we think, a requirement of finality in the accounting that can be attained only by the absolute segregation of each period of six months as well from that portion of the term that has preceded it as from that which is to follow it.

That the minimum rental should be paid every six months, and not at the end of the term by way of equating the income of the lessor under the lease to a minimum monthly average of $1,000 for the 240 months of which the term consists, seems to be established by the sixteenth paragraph of the lease, by which provision is made for, inter alia, the case of a partial destruction of the works demised. Here there appear the words, "And during the time of such repairing or rebuilding the minimum rental payable by the said party of the second part shall be reduced," etc. The parties manifestly contemplated the payment of the minimum rental by the tenant every half year. It is true that the "minimum rental," so called, is, in respect of the fact that the full use of the works cannot be made by the lessee, to be equitably reduced, but the reduction is to operate on the minimum rental unaffected by the fact that in previous half years the lessor may have received payments from profits whose amount exceeded the sum of $1,000 per month.

To the defendant's argument, based on the use of the words "during the time of possession or occupation," that occur in the fourteenth paragraph of the lease where the provision for the payment of the minimum rental is made, little weight can be attached. The words referred to were, in our opinion, introduced by the draftsman for the purpose of limiting the liability of the lessee to the payment of the minimum rental there covenanted for to the time that it should remain in actual possession or occupation of the property demised. The parties evidently had in mind the possibility of the total destruction of the works through some one of the causes enumerated in the sixteenth paragraph of the

lease and the termination of the leasehold before twenty years should have elapsed from the date of its creation, and attempted, in somewhat awkward phraseology, it is true, to preclude all chance of claim on the tenant for the minimum rent in respect of the period between the time when it might, under such circumstances, abandon the property and the end of what would, normally, have been the full term of the lease.

The precedents cited by the defendant in support of its theory as to the true interpretation of the provisions of the lease on the subject of the payment of a minimum rental are not in point.

In the contract under consideration in the case of the Phœnix Silk Mfg. Co. v. Reilly, 187 Pa. 526, there was nothing that called for annual settlements between the parties thereto. This significant and important fact was pointed out in the opinion of the court below. In the case at bar there is provision made by the lease for semiannual settlements and payments.

The case of Homet v. Singer, 35 Pa. Superior Ct. 491, was one in which the plaintiff was endeavoring, most inequitably, to enforce the forfeiture of a lease, and which was decided against him on the application of principles strictissimi juris. By the lease whose construction was there in dispute the minimum rental to be paid by the tenant was fixed by a clumsy reference to a yearly average. No time was fixed, however, for the payment of rent, and on this ground alone the case must be distinguished from that now before us.

The rule for judgment is made absolute.

*Error assigned* was the order of the court, making absolute rule for judgment for want of a sufficient affidavit of defense.

*James Collins Jones,* for appellant.

*John G. Johnson,* with him *John Sparhawk, Jr.,* for appellee.

PER CURIAM, February 14, 1910:

The judgment is affirmed on the opinion of Judge AUDEN-RIED.